# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HU, CHENGJI**<br><br>Plaintiff,<br><br>v.<br><br>**THE ENTITIES AND INDIVIDUALS IDENTIFIED IN ANNEX A**<br><br>Defendants. | Civil Case No.: 1:25-cv-7709 |

### S<small>EALED</small> C<small>OMPLAINT FOR</small> D<small>ESIGN</small> P<small>ATENT</small> I<small>NFRINGEMENT</small>
### J<small>URY</small> T<small>RIAL</small> D<small>EMANDED</small>

Hu, Chengji ("Plaintiff"), by and through undersigned counsel, brings this civil action for patent infringement against Defendant, and alleges as follows:

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq., to enjoin and obtain damages resulting from Defendants' unauthorized importation for sale, manufacture, use, and offer to sell a hat holder that infringes United States Design Patent [Redacted] entitled "Hat Rack."

## PARTIES

1. Plaintiff, a People's Republic of China Citizen, is the owner of the Patent-in-Suit and sells hat holder products protected by the ornamental design of the Patent-in-Suit on online platforms to U.S. customers. The Patent-in-Suit is attached as **Exhibit A**.

2. Plaintiff has expended substantial time, money, and other resources in producing,

advertising, and otherwise promoting the products covered by the Patent-in-Suit. Over time, Plaintiff has invested heavily in the products covered by the Patent-in-Suit.

3. Plaintiff's products protected by the Patent-in-Suit have become widely known from its distinctive design, and as such, Plaintiff's products protected by the Patent-in-Suit have become recognized by consumers as high quality products sourced from Plaintiff. Over time, Plaintiff's products protected by the Patent-in-Suit have become popular, resulting in multiple seller aliases copying the ornamental design of the Patent-in-Suit.

4. Plaintiff became aware of multiple sellers on various online platforms who also started to sell products virtually identical to the claimed Patent-in-Suit. Plaintiff filed this action to combat these Seller Aliases listed on Annex A who are harming Plaintiff by offering to sell, selling, and shipping unlicensed products that infringe the Patent-in-Suit. See **Exhibit B**.

5. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Patent-in-Suit.

6. Defendants are anonymous individuals and/or entities who target sales to Illinois residents by setting up and operating various "storefronts" via online retail websites accepting U.S. Dollars that target Illinois consumers by selling, offering to sell, and/or shipping products that infringe the Patent-in-Suit ("Infringing Products") to the United States, including Illinois.

7. Upon information and belief, Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendants has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

8. Upon information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Annex A. Tactics used by Defendants to conceal their identity and the full scope of their operations make it virtually impossible for

Plaintiff to learn Defendants' true identity and the scope of their infringing network operations.

9. At present, Defendants can only be identified through their storefronts and other limited publicly available information. No credible information regarding Defendants' physical addresses is provided. Plaintiff will voluntarily amend its Complaint as needed if Defendants provide additional credible information regarding their identity and location.

**DEFENDANTS' INFRINGING CONDUCT**

10. According to FY 2024 Intellectual Property Right Seizure Statistics report by U.S. Customs and Border Protection ("CBP"), seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. **Exhibit C**, FY 2024 Intellectual Property Right Seizure Statistics report.

11. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020). "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit E**, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

12. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their interconnected e-commerce operations.

13. The e-commerce stores operating under the Seller Aliases appear sophisticated and accepts payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. As seen by the webpages in **Exhibit B**, the e-commerce stores operating under the Seller Aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of Plaintiff's Patent-in-Suit products.

14. E-commerce store operators like Defendants regularly register new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the scope of their infringing operations. Such tactics help Defendants avoid being shut down. Even after being shut down through enforcement efforts, such e-commerce store operators may conveniently register another storefront under another seller alias and continue to sell the Infringing Products.

15. Defendants use different fake names and payment accounts to keep selling despite Plaintiff's actions. They also have bank accounts outside this Court's reach and may move money there to avoid paying any monetary judgment to Plaintiff. In fact, financial records from similar cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis to avoid paying any judgment ordered by a court of law.

16. Upon information and belief, Defendants are in communication with one another via chat rooms such as WeChat and regularly participate in other websites that provide litigation specific content to warn anonymous seller aliases of upcoming lawsuits against their respective product listings.

17. Even though Defendants operate under multiple fictitious Seller Aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information, the same registration patterns, the same accepted payment methods, the same check-out methods, the same keywords and titles, the same product descriptions, the same advertising tactics, similarities in pricing and quantities, the same incorrect grammar and misspellings, and the same product and advertising images and videos.

18. Defendant's Infringing Products also contain similar flaws and irregularities evidencing that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

19. Upon information and belief, Defendants receive or purchase the Infringing Products from one or more major manufacturers in China. The identities of the major manufacturers remain unknown to Plaintiff.

20. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. As seen in Exhibit B, the e-commerce stores operating under the Seller Aliases offer shipping to the United States, including Illinois, and, upon information and belief, Defendants have all sold and shipped Infringing Products into Illinois. As seen in Exhibit B, most Defendants have recently sold and shipped Infringing Products into Illinois.

## JURISDICTION AND VENUE

21. This is an action for infringement of the Patent-in-Suit arising under 35 U.S.C. §§ 271(a), 281, and 284 - 85. This Court has original subject matter jurisdiction over this claim under 28 U.S.C. §1331 and §1338.

22. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Illinois, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants offer to sell, and upon information and belief, sell and ship Infringing Products to residents within the Northern District of Illinois. Thus, each Defendant has purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their patent infringement activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of offering to sell, selling, and shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. As a result, Defendants are committing tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in Illinois.

23. In addition, after service of summons, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on information found on Defendant's Infringing Product listings and based on the Seller Aliases, each of the Defendants is a foreign entity or individual not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

24. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District, and Defendants as delineated in Annex A are directly targeting their business activities of offering to sell, selling, and shipping the Infringing Products to this District.

25. In addition, based on information found on Defendants' Infringing Product listings and based on the Seller Aliases, each of the Defendants is a foreign entity or individual, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## U.S. PATENT NO. [Redacted]

26. On July 23, 2024, United States Design Patent No. [Redacted] was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "hat rack" The Patent-in-Suit has a filing date of August 31, 2002. A true and correct copy of the Patent-in-Suit is attached hereto as **Exhibit A**.

27. Plaintiff is the owner of the Patent-in-Suit.

28. Plaintiff sells products that include the ornamental design protected by the Patent-in-Suit. The Patent-in-Suit includes the ornamental design below, specifically protecting the hat rack.

| Patent Number | Claimed Design | Issue Date |
|---|---|---|
| [REDACTED] | The ornamental design for hat rack | 07/23/2024 |

## COUNT I
## INFRINGEMENT OF U.S. DESIGN PATENT [Redacted]

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. Defendants, directly or through intermediaries, offer to sell, sell, and ship products which infringe the ornamental design of the Patent-in-Suit. *See* **Exhibit B**.

31. Defendants are making, using, offering for sale, selling, and/or importing into the United States, and Illinois, for subsequent sale or use, Infringing Products that infringe directly and/or indirectly infringe the ornamental design of the Patent-in-Suit. *See* **Exhibit B**.

32. Defendants are directly infringing, literally infringing, and/or infringing the Patent-in-Suit under the doctrine of equivalents. *See* **Exhibit B**.

33. Defendants' offering for sale, sales, and shipments of Infringing Products has caused and continues to cause Plaintiff to suffer irreparable harm through loss of Plaintiff's exclusive patent rights.

34. Defendants' offering for sale, sales, and shipments of Infringing Products into the United States was willful in nature.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

1. a judgment in favor of Plaintiff that Defendants have infringed the Patent-in-Suit;

2. a temporary, preliminary, and permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them from infringement of, inducing the infringement of, or

contributing to the infringement of the Patent-in-Suit, or such other equitable relief the Court determines is warranted;

3. a judgment and order requiring Defendants pay to Plaintiff their total profit, including damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the Patent-in-Suit as provided under 35 U.S.C. § 289, and an accounting of ongoing post-judgment infringement;

4. a judgment and order requiring Defendants pay to Plaintiff a reasonable royalty for Defendants' infringement of the Patent-in-Suit, together with interest and costs, and that such amount found or assessed be increased three times as provided under 35 U.S.C. § 284;

5. a determination that this is an exceptional case within the meaning of 35 U.S.C. § 285 and award to Plaintiff the costs, expenses, and reasonable attorneys' fees incurred in this action;

6. that, upon Plaintiff's request, all in privity with Defendants and with notice of the Injunctive relief, including but not limited to any online marketplace platforms, such as Alibaba, Ali Express, Amazon, DH Gate, eBay, Newegg, Shopify, Wish, and vendors of sponsored search terms or online ad-word providers, financial services providers, including but not limited to credit card providers, banks, merchant account providers, third party payment processors, web hosts, and Internet search engines, such as Google, Bing, and Yahoo shall:

    a. cease providing services to Defendants, currently or in the future, to sell or offer for sale goods under the Patent-in-Suit;

    b. cease displaying any advertisements in any form, connected or associated with Defendants in connection with the sale of infringing goods under the Patent-in-Suit; and

    c. disable all links to the marketplace accounts identified on Annex A from displaying in search results, including from any search index; and

7.     any and all other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED July 9 , 2025                      Respectfully submitted,

/s/ Kaibin Huang, esq
Kaibin Huang (No. 4841201)
418 Broadway # 6892
Albany, NY 12207
E: attorney@meritas.law
P: (347) 868-3818

*ATTORNEY FOR PLAINTIFF*